IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00409-RBJ

YVETTE PENTLAND,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

---

ORDER

---

## BACKGROUND

Tony Pentland was an employee at Schlumberger and insured under a group life insurance plan administered by defendant Metropolitan Life Insurance Company ("MetLife"). Complaint, ECF No. 1 at ¶¶7-8. On March 30, 2017, Schlumberger terminated Mr. Pentland. *Id.* at ¶8. On April 11, 2017, MetLife sent a letter to Mr. Pentland informing him that he was eligible to convert $207,000 in basic life coverage and $525,000 in optional life coverage to an individual life insurance policy. *Id.* at ¶9. They gave him a conversion application to complete and suggested he contact a financial professional with Massachusetts Mutual Life Insurance Company to assist him with converting this coverage. *Id.* at ¶¶9-10. Mr. Pentland and his spouse received assistance from a financial services representative with the company, Robert Lucke, in completing the conversion application. *Id.* at ¶¶11-12. Mr. Pentland elected to convert

1

$207,000 in basic life coverage and $525,000 in optional life coverage from the Schlumberger group plan to an individual policy. *Id.* at ¶12.

MetLife issued Mr. Pentland a policy with Policy Number 217012877A, the "Individual Policy," with an effective date of May 1, 2017.[1] On June 7, 2017, the Pentlands paid MetLife $3,391.84 as the first premium due under the Individual Policy. *Id.* at ¶15. The Pentlands continued to make timely premium payments for the Individual Policy through the date of Mr. Pentland's death on November 11, 2017. *Id.* at ¶18.

After Mr. Pentland's death, Ms. Pentland submitted a claim for benefits under the Individual Policy. However, in a letter dated December 12, 2017, MetLife notified Ms. Pentland that it was rescinding the Individual Policy after a review of the terms of the Schlumberger Group Life, Accidental Death & Dismemberment, and Business Travel Accident Plan (the "Group Plan"). MetLife asserted that Mr. Pentland was still covered by the Group Plan at the time of his death, and therefore "the conversion to the individual policy was not necessary." ECF No. 12, Ex. 2. MetLife refunded Ms. Pentland $11,945.64 for the premiums paid on the Individual Policy. *Id.*; ECF No. 1 at ¶20. MetLife also payed Ms. Pentland the amount it concluded she was entitled to receive under the Group Plan: $326,066.99. However, Ms. Pentland asserts that the Individual Policy was in effect on the date of Mr. Pentland's death, and as the sole, primary beneficiary of the Individual Policy, she is entitled to the value of the Individual Policy: $732,000. ECF No. 1 at ¶¶14, 22, 23.

---

[1] Some courts refer to policies that are converted from an employer's group plan to an individual policy as "converted policies" or "conversion policies." I will use the term "Individual Policy" to refer to Mr. Pentland's policy and the term "converted policy" to refer to these types of insurance policies in general.

In February 2018, Ms. Pentland filed a complaint in this court alleging breach of Colorado state law – specifically, breach of contract and tortious breach of duty of good faith and fair dealing. ECF No. 1. The basis for jurisdiction was diversity jurisdiction under 28 U.S.C. §1332. MetLife filed an answer, asserting that the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§ 1001-1461 ("ERISA"), preempts Ms. Pentland's Colorado state law claims. At the scheduling conference held on June 11, 2018, I asked the parties to submit briefs as to whether Ms. Pentland's state law breach of contract and related claims arising under the Individual Policy are preempted by ERISA. ECF No. 11. Both parties submitted an opening brief, ECF Nos. 12, 13, and a response brief, ECF Nos. 15, 16. The parties jointly moved for an Order for Determination on the ERISA issue, ECF No. 17. I determine that ERISA preempts plaintiff's state law claims.

## **ANALYSIS**

Section 514(a) of ERISA provides that the statute preempts all state laws that "relate to any employee benefit plan." 29 U.S.C. § 114(a). The Supreme Court has instructed that in determining the reach of ERISA preemption, "the purpose of Congress is the ultimate touchstone." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8 (1987). The purposes of ERISA are described by the Supreme Court in *Aetna Health Inc. v. Davila*:

> Congress enacted ERISA to protect . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans. . . . The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern.

542 U.S. 200, 208 (2004) (citing *Alessi v. Raybestos-Manhatten, Inc.*, 451 U.S. 504, 523 (1981)) (internal quotation marks omitted). In sum, the Supreme Court has described the purpose of ERISA as twofold: the protection of employee interests and administrative ease for employers. *See, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990).

To determine whether ERISA preempts Ms. Pentland's state law claims in this case there are two questions I must answer. Because plaintiff asserts claims for benefits under the Individual Policy, the first question is whether the Individual Policy is subject to ERISA regulation as an ERISA plan. *See Demars v. CIGNA Corp.*, 173 F.3d 443, 446 (1st Cir. 1999); *Waks v. Empire Blue Cross/ Blue Shield*, 262 F.3d 872, 875 (9th Cir. 2001). The Ninth Circuit has held that "[t]he answer is straightforward. . . . An employee benefit plan must cover at least one employee to constitute an ERISA benefit plan." *Waks*, 262 F.3d at 875. I agree with the Ninth Circuit on this point: because Mr. Pentland's Individual Policy covered him as an individual and not as an employee of Schlumberger or any other employer, this policy is not itself an employee benefit plan under ERISA. The second question I must answer is whether the state law claims under the Individual Policy are so related to an employee benefit plan that they are preempted. *See Waks*, 262 F. 3d at 875.

Two cases from the Ninth Circuit are instructive on this second question: *Waks*, 262 F. 3d 972, and *Reynolds v. Metropolitan Life Ins.*, 685 F. App'x 615 (9th Cir. 2017) (unpublished). In *Waks*, the plaintiff was initially insured under a group plan from her spouse's employer that was subject to ERISA regulation. When the employer ceased operations, the plaintiff applied for individual coverage pursuant to the conversion rights of the group policy. The insurance company, Empire, issued her an individual medical insurance policy. *Id.* at 874. When Empire

4

subsequently denied an insurance claim under plaintiff's converted policy and she filed a complaint asserting state-law claims of breach of contract, Empire defended on the ground that claims under plaintiff's converted policy were preempted by ERISA. The Ninth Circuit held that "claims arising under a converted individual policy are not 'related to' an ERISA plan for purposes of ERISA pre-emption." 262 F.3d at 875

On the other hand in *Reynolds*, the Ninth Circuit found that a dispute about an insured's converted life insurance policy was preempted by ERISA where the insured was seeking to file a claim both under an employee group life insurance plan and under her converted policy. The Ninth Circuit reasoned that the defendant insurance company necessarily had to consider a "one payment only" provision in the group plan covered by ERISA in deciding how to pay benefits under either policy. Therefore, claims under the converted policy were sufficiently related to the group plan to justify preemption.

Cases from other circuits similarly distinguish between lawsuits involving benefits under a converted policy and lawsuits where a court must consider the conversion rights under an employee benefit plan to determine the existence of benefits under a converted policy. In general, courts have found that state law claims in the former situation are not preempted by ERISA as the purposes of the statute are not implicated, but they are preempted in the latter situation.

By way of example, the First Circuit in *Demars v. CIGNA Corp.*, faced the question of whether ERISA preempts state law claims related to a converted policy. 173 F.3d 443 (1st Cir. 1999). The insurance company, CIGNA, determined that the insured, Demars, had incorrectly reported her income on the application to convert her group coverage to an individual policy

5

upon termination of her employment. CIGNA subsequently demanded that Demars remit alleged overpayments. Rather than repaying CIGNA the allegedly excessive benefits, Demars brought suit alleging breach of contract and unfair trade practices against CIGNA. *Id.* at 444.

To the issue of whether the plaintiff's state law claims were sufficiently related to an employee benefit plan, CIGNA argued that because the plaintiff had obtained the converted policy by virtue of rights granted by the group disability benefits plan, the two policies were related. However, the First Circuit held that this "but-for" relationship was insufficient, and that ERISA's twin purposes of protecting the benefit funds of employees and creating administrative ease for employers would not be furthered in that situation. Because employers have no control over or tie to funds under a converted policy, there is no risk of employers abusing or mismanaging these funds nor do employers bear any administrative responsibility for converted policies. *Id.* at 446. The First Circuit emphasized that "Congress placed into ERISA an express disavowal of any intent to regulate insurers *qua* insurers." *Id.* at 446 (citing 29 U.S.C. §1144(b)(2)).

The First Circuit drew a distinction between conversion rights and converted policies. In doing so it cited several district courts that have made the same distinction. For example, the Southern District of Georgia explained this distinction as that "[a]ny claim that Defendant failed to offer proper conversion plan options . . . relates to the ERISA plan and is pre-empted by ERISA," but "[t]he concerns behind ERISA pre-emption are not implicated by state-law claims arising from obligations incurred under the conversion policy itself." *Mimbs v. Commercial Life Ins.*, 818 F. Supp. 1556, 1561 (S.D. Ga. 1993).

I agree that the distinction between conversion rights and a converted policy is meaningful in determining ERISA preemption. Applying this distinction to the present case, the issue remains whether Ms. Pentland's state law claims concern the right to convert from the Schlumberger Group Plan to the Individual Policy or whether they concern benefits under the Individual Policy. Ms. Pentland argues that this case only concerns the payment of benefits due to her under the Individual Policy, and that her claims have nothing to do with the Group Plan or conversion rights. MetLife argues that Ms. Pentland's claims necessarily require consideration of whether they mistakenly issued her an Individual Policy, which involves consideration of conversion rights. *Dillon v. Metropolitan Life Insurance*, though not factually identical, is instructive on this issue. 718 F. Supp. 2d 321 (S.D.N.Y. 2010).

In *Dillon,* an employee who participated in a group life insurance plan took an extended medical leave of absence. Contrary to the terms of the group plan, the employee's group life insurance benefits were terminated. *Id.* at 324. The employee then converted the group life insurance policy to an individual policy worth $837,000, the same amount of coverage as under the group plan. *Id.* Within days of the insured's death, the employer realized that its termination of the group policy was mistaken, and instructed the insurer, MetLife, to reinstate the policy. *Id.* MetLife reinstated the policy, sent a letter to plaintiff stating that the converted policy was issued in error as the decedent was covered under the group policy at the time of death, returned the premium payments for the converted policy, and paid the plaintiff, Ms. Dillon, the amount she was owed under the group policy, $837,000. *Id.* Metlife did not pay Ms. Dillon under the converted policy, citing their "one payment only" policy. Ms. Dillon filed suit, claiming she was entitled to an additional payment of $837,000 under the converted policy. The *Dillon* court held

7

that "[t]he core of the dispute in this action stems not from the converted policy but instead from the process of conversion and the consequences of that process." *Id.* at 326.

There are some differences between Ms. Pentlands claims and the *Dillon* claims. The plaintiff in *Dillon* was contending that she entitled to recover under two policies (both the group plan and the converted policy). While it is not completely clear from the Complaint, it seems that Ms. Pentland is only asking for recovery under the Individual Policy, instead of recovery under the Group Plan. Assuming this is correct, though Ms. Pentland is only asking for payment under the Individual Policy, the core of Ms. Pentland's dispute with MetLife turns on the consequences of the conversion of the Group Plan. Because resolution of this issue involves consideration of the terms of the Group Plan being converted, I find that Ms. Pentland's state law claims are sufficiently related to an employee benefit plan to be preempted by ERISA.

Plaintiff points to a decision from this district, *Eberlein v. Provident Life & Acc. Ins.*, for support, but I find that the facts of this case are distinguishable. 2008 WL 791944 (D. Colo. Mar. 20, 2008). In *Eberlein*, the plaintiff's policy originated as an individual policy with a separate policy number, although it was provided through an employee benefit plan, assigned a risk group number associated with the employer, and had its premiums paid through the employer's salary allotment plan. Upon the plaintiff's termination, the insurer permitted plaintiff to continue his individual policy and retain his discount, though it was no longer tied to the employer's risk group number or paid through the employer's salary allotment plan. Because the individual policy continued after termination, there was never a need for conversion from a group plan. Thus, the court found that the employer did not have ongoing administrative and financial ties to the plaintiff's policy, and the state law claims were not preempted by ERISA.

*Id.* at *17-18. While Schlumberger has no ongoing administrative or financial ties to the Individual Policy, this case nonetheless concerns conversion rights from the Group Plan, over which Schlumberger does have ongoing administrative and financial responsibilities. Accordingly, I find that ERISA does preempt plaintiff's claims. I grant plaintiff leave to amend the Complaint to state claims under ERISA.

**ORDER**

(1) The Court grants the Joint Motion for Order for Determination [ECF No. 17] and finds, in resolving the motion, that ERISA preempts plaintiff's state law claims.

(2) The Court grants plaintiff leave to amend her complaint.

DATED this 20th day of February, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge